2004 UT App 7

**STATE of Utah, Plaintiff and Appellee,**

v.

**Anastasia C. PIEP, Defendant and Appellant.**

No. 20030059–CA.

Court of Appeals of Utah.

Jan. 15, 2004.

Aric Cramer and Alisha Giles, Cramer Cramer & Adair LLC, Bountiful, for Appellant.

Troy S. Rawlings, Farmington, for Appellee.

Before BENCH, Associate P.J., DAVIS and GREENWOOD, JJ.

## OPINION

BENCH, Associate Presiding Judge:

¶ 1 Defendant Piep appeals her convictions for lewdness involving a child, a class A misdemeanor, in violation of Utah Code Annotated section 76–9–702.5(1)(e) (2003),[1] and child abuse, a class B misdemeanor, in violation of Utah Code Annotated section 76–5–109(1)(c)(iv) (2003).[2] We affirm in part and reverse in part.

## BACKGROUND

¶ 2 Piep's husband, Norman, purchased a book entitled "Sex Q & A" (the book) at the Barnes & Noble store in Bountiful, Utah. Piep admitted to showing her twelve-year-old daughter, J.W., a portion of the book related to dating. Norman showed J.W. part of the chapter entitled "Questions Women Ask," which discusses sexual self-esteem and masturbation.

¶ 3 Amy Graham from Child Protective Services contacted Detective Feigleson about investigating alleged inappropriate behavior at J.W.'s house. J.W. gave a general description of the book to Detective Feigleson and told the detective that the book had photographs of "naked people doing bad things." Detective Feigleson visited Piep's home and asked Piep if she could have the book. Piep retrieved the book and gave it to the detective.

¶ 4 While in Piep's home, Detective Feigleson noticed a "very foul odor." Throughout the home, the detective saw garbage, clothing, and food on the floor. The cupboards were all open and dirty dishes were piled all over the countertops and in the sink. One bowl appeared to have something moldy in it and quite a few of the containers in the refrigerator appeared to contain moldy and rotten food. There was a green substance running out of the refrigerator onto the floor. In the bedroom of J.W.'s younger brother, Detective Feigleson noticed a pair of pants with a large brown stain on the seat of them and what appeared to be human feces next to them. The room smelled of human waste. There were brown stains on the walls next to the door of the bedroom.

¶ 5 Piep was originally charged by information with dealing in material harmful to a minor, in addition to the lewdness involving a child and child abuse charges. On the day set for preliminary hearing, the State moved to dismiss the material harmful to a minor charge. At a bench trial held on the remaining charges, after the State presented its case, Piep made a motion to dismiss. As to the lewdness charge, the State argued that Piep performed a lewd act when she showed the book to J.W. Piep countered that the crime, if any, came under the dealing in material harmful to a minor statute. *See* Utah Code Ann. § 76–10–1206 (2003). As to the child abuse charge, Piep claimed that there was no evidence of infestation or a specific act that imperiled the children. The State responded that the home created a condition that imperiled the children's health or welfare, and that an actual physical impact on the children was not required. The court took a recess to review its notes, the exhibits, the statutes, and *Provo City v. Cannon*, 1999 UT App 344, 994 P.2d 206, before denying Piep's motion to dismiss. After closing argu-

---

1. Both parties cite to subsection (f) of an earlier version of the lewdness involving a child statute. The 2003 amendment deleted a subsection, causing subsection (f) to become subsection (e) in the most recent version of the statute. Because no other relevant changes have been made to the statute, we cite to the 2003 version.

2. Because no pertinent changes have been made to the child abuse statute, we cite to the most recent version.

ments, the court found Piep guilty on both charges. Piep appeals.

## ISSUES AND STANDARD OF REVIEW

¶ 6 Piep challenges the sufficiency of the evidence to support her conviction for lewdness involving a child. Piep also raises a number of constitutional challenges to the lewdness involving a child statute. Because we reverse her lewdness involving a child conviction based upon insufficient evidence, we do not reach the merits of her constitutional claims. Additionally, Piep argues that the evidence was insufficient to sustain her conviction for child abuse.[3]

¶ 7 " 'When reviewing a bench trial for sufficiency of evidence, we must sustain the trial court's judgment unless it is against the clear weight of the evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made.' " *Spanish Fork City v. Bryan,* 1999 UT App 61,¶ 5, 975 P.2d 501 (citation omitted). "However, 'before we can uphold a conviction it must be supported by a quantum of evidence concerning each element of the crime as charged from which the [factfinder] may base its conclusion of guilt beyond a reasonable doubt.' " *State v. Larsen,* 2000 UT App 106,¶ 10, 999 P.2d 1252 (quoting *Bryan,* 1999 UT App 61 at ¶ 5, 975 P.2d 501) (other citation omitted).

## ANALYSIS

### I. Lewdness

¶ 8 The statute on lewdness involving a child states, in pertinent part:

(1) A person is guilty of lewdness involving a child if the person ... intentionally or knowingly does any of the following to, or in the presence of a child who is under 14 years of age:

(a) performs an act of sexual intercourse or sodomy;

(b) exposes his or her genitals, the female breast below the top of the areola,

the buttocks, the anus, or the pubic area ...;

(c) masturbates;

(d) under circumstances not amounting to sexual exploitation of a child under Section 76–5a–3, causes a child under the age of 14 years to expose his or her genitals, anus, or breast, if female, to the actor, with the intent to arouse or gratify the sexual desire of the actor or the child; or

(e) *performs any other act of lewdness.*

Utah Code Ann. § 76–9–702.5(1) (2003) (emphasis added).

¶ 9 The trial court found that Piep performed "any other act of lewdness" by showing J.W. a book that contained lewd material. Utah Code Ann. § 76–9–702.5(1)(e). The court reasoned that the material was lewd because it was salacious which, according to the dictionary definition, means "arousing or appealing to sexual desire or imagination." Essentially, the court determined that showing the book to J.W. was an *act* of lewdness because the book portrayed acts listed in the lewdness statute. By its plain language, taken in context with the other acts listed in the statute, subsection (e) requires the performance by the defendant of a sexual act. We fail to see how showing J.W. a book is a sexual act covered by the statute. The contents of the book may well appeal to sexual desire or imagination; but Piep did not dramatize, gesticulate, imitate, or even simulate the acts covered in the book.

¶ 10 The Utah Supreme Court has carefully examined the lewdness statute, Utah Code Ann. § 76–9–702(1), which is strikingly similar to the lewdness involving a child statute. The supreme court explained that, "in instances where an inexhaustive enumeration of particular or specific terms is followed by a general term or terms that suggest a class," the doctrine of ejusdem generis applies. *In re A.T.,* 2001 UT 82,¶ 12, 34 P.3d 228; *see also State v. Serpente,* 768 P.2d 994, 997 (Utah Ct.App.1989) (applying the doctrine of ejusdem generis to the phrase

---

**3.** On both of these claims, Piep has notably complied with the marshaling requirement of rule 24.

*See* Utah R.App. P. 24(a)(9).

"any other act of gross lewdness" because the phrase "derive[s] its definition from the context in which it appears"). The doctrine restricts that general term, or "catchall phrase at the end of a statutory list of more specific proscribed acts," *A.T.*, 2001 UT 82 at ¶ 8, 34 P.3d 228, to "include things of the same kind, class, character, or nature as those specifically enumerated, unless there is something to show a contrary intent." *Id.* at ¶ 12. Here, there is nothing in the statute to show a contrary intent so we restrict "any other act of lewdness," Utah Code Ann. § 76–9–702.5(1)(e), to include only those acts of the "same kind, class, character, or nature as" sexual intercourse or sodomy, exposure of private parts, or masturbation. *A.T.*, 2001 UT 82 at ¶ 12, 34 P.3d 228.

¶ 11 *In re A.T.* addressed the situation of a juvenile, A.T., charged with lewdness, "specifically, masturbating in the presence of another in a lewd and offensive manner." *Id.* at ¶ 1. The court applied the doctrine of ejusdem generis to answer the question of whether A.T.'s conduct—"a deliberate simulation of masturbation"—could be considered "an 'other act of lewdness.' " *Id.* at ¶ 11. The court held that the simulation of any of the acts enumerated in the statute, is of the "same general kind, class, character, or nature" as any of those acts. *Id.* at ¶ 13. Here, while the book may discuss sexual activities and contain explicit pictures, Piep never performed any of those acts, or simulated any of those acts, in front of a child. Thus, there is no " 'quantum of evidence concerning [an] element of the crime.' " *State v. Larsen*, 2000 UT App 106,¶ 10, 999 P.2d 1252 (quoting *Spanish Fork City v. Bryan*, 1999 UT App 61,¶ 5, 975 P.2d 501) (other citation omitted).

## II. Child Abuse

¶ 12 The child abuse statute defines physical injury as "an injury to or condition of a child which impairs the physical condition of the child, including: . . . (iv) any other condition which imperils the child's health or welfare. . . ." Utah Code Ann. § 76–5–109(1)(c) (2003).

¶ 13 Piep argues that a filthy house with a very foul odor, rotten and moldy food

in and out of the refrigerator, a green substance running out of the refrigerator onto the floor, garbage and food on the floor, clothes everywhere, brown stains on the wall, and what appeared to be human feces lying next to a pair of pants with a brown stain on the seat, does not create a condition that imperils a child's health or welfare. We disagree. "We do not read the statutory definition as requiring some physical impact in order to imperil the child's health or welfare." *Provo City v. Cannon*, 1999 UT App 344,¶ 11, 994 P.2d 206. "[U]nder Utah's child abuse act, physical injury can include acts that imperil or threaten a child's health or welfare without an actual physical impact on the child." *Id.* at ¶ 14. In *Cannon*, we upheld Cannon's conviction for child abuse after he held a nine-month-old infant over the railing of a third-story apartment balcony. *See id.* at ¶¶ 1–2. Although the infant suffered no injury and there was no physical impact, the infant was imperiled or endangered when he was suspended by his arms, many feet above the ground, for several minutes. *See id.* at ¶ 13. Similarly here, the filthiness of the home created a condition that endangered the health and welfare of the children who live there. We therefore cannot say that the trial court's adjudication was " 'against the clear weight of the evidence.' " *Spanish Fork City v. Bryan*, 1999 UT App 61,¶ 5, 975 P.2d 501 (citation omitted).

## CONCLUSION

¶ 14 The trial court mistakenly determined that showing J.W. a book containing what it considered "salacious" material qualified as performing "any other act of lewdness" under the lewdness involving a child statute. The trial court's adjudication that the filthiness of the home created a condition that imperiled the health or welfare of the children was not against the clear weight of the evidence.

¶ 15 We therefore reverse Piep's lewdness involving a child conviction and affirm her child abuse conviction.

¶ 16 WE CONCUR: JAMES Z. DAVIS, Judge and PAMELA T. GREENWOOD, Judge.