2007 UT App 128

STATE of Utah, Plaintiff and Appellee,

v.

Scott David FERRY, Defendant and Appellant.

No. 20040537–CA.

Court of Appeals of Utah.

April 19, 2007.

Patrick V. Lindsay, Provo, and Margaret P. Lindsay, Orem, for Appellant.

Mark L. Shurtleff, atty. gen., and Kenneth A. Bronston, asst. atty. gen., Salt Lake City, for Appellee.

Before Judges BILLINGS, DAVIS, and MCHUGH.

## OPINION

DAVIS, Judge:

¶1 Defendant Scott David Ferry appeals his convictions for unlawful possession of a controlled substance, a third degree felony, *see* Utah Code Ann. § 58-37-8(2)(a)(i) (2002), and unlawful possession of drug paraphernalia, a class B misdemeanor, *see id.* § 58-37a-5(1) (2002). We reverse and remand.

## BACKGROUND

¶2 In the early morning hours of November 15, 2002, Deputy Kent Cameron of the Salt Lake County Sheriff's Office stopped a vehicle for driving without headlights. As Deputy Cameron drove toward the vehicle, he noticed the vehicle's four occupants engage in "a lot of subtle movement." He also saw the driver's "arms and shoulders kinda moving" as if he were "bending forward" and "reaching down to the floor." As Deputy Cameron walked toward the vehicle, he noticed the vehicle's occupants engage in "nervous movements" such as "looking over their shoulders seeing what was going on."

¶3 Eventually, Deputy Cameron asked the four occupants to step out of the vehicle. As Defendant stepped out of the backseat, Deputy Cameron observed a syringe on the floor near where Defendant's feet had been. A field test revealed that the syringe contained methamphetamine. Defendant told Deputy Cameron that "he knew the syringe was there on the floor" but did not know who it

belonged to. Deputy Cameron then searched the vehicle and found a wooden box containing marijuana under the driver's seat. The driver admitted that the box and marijuana were his.

¶ 4 Deputy Cameron placed Defendant under arrest and transported him to the county jail. During the transport, Defendant initiated a conversation with Deputy Cameron during which Deputy Cameron answered Defendant's questions and then asked Defendant some questions. At no time prior to or during the conversation did Deputy Cameron advise Defendant of his *Miranda* rights. Defendant was charged with unlawful possession of a controlled substance, *see* Utah Code Ann. § 58-37-8(2)(a)(i), and unlawful possession of drug paraphernalia, *see id.* § 58-37a-5(1).

¶ 5 Defendant's trial counsel filed a motion to suppress Defendant's statements to Deputy Cameron, but the trial court denied the motion as untimely. Trial counsel admitted that she missed the deadline due to her "busy schedule," and that the untimely motion was "not a trial strategy."

¶ 6 At trial, Deputy Cameron testified that Defendant stated during the transport that he had "been addicted to drugs and had a problem with drugs for the past few years. His drug of choice was meth and he—the last time he had a hit or a dose of meth was ten hours ago...." Defendant, on the other hand, testified that "I told him that I—that I did use drugs and that my drug of choice was meth, but that wasn't—that wasn't my needle in the car." Defendant denied telling Deputy Cameron that he had used methamphetamine ten hours prior to the arrest or that he was a drug addict.

¶ 7 Deputy Cameron testified that he did not test the syringe for fingerprints or DNA because it was not his "practice" to conduct such tests on syringes. Deputy Cameron also testified that he did not check any of the vehicle's occupants' arms for needle marks or submit any of the occupants to a drug test. A jury convicted Defendant of both charges, and this appeal followed.

¶ 8 Pursuant to rule 23B of the Utah Rules of Appellate Procedure, *see* Utah R.App. P.

23B, we remanded this case to the trial court for an evidentiary hearing on Defendant's claims of ineffective assistance of counsel. After the hearing, the trial court entered several findings of fact, most of which were consistent with Deputy Cameron's testimony at the hearing, his police report, and his testimony at trial. Specifically, the trial court found that while en route to the police station, Deputy Cameron asked Defendant whether "he had been in trouble in the past," and "what kind of trouble he had been in." The trial court also found that Defendant answered the latter question by stating that "he is a drug abuser and his drug of choice is meth," and that Defendant stated that "he last used meth ten hours before the arrest." Finally, the trial court found that "[d]uring direct examination ..., Deputy Cameron agreed that he asked [D]efendant what his drug of choice was. During cross examination ..., however, Deputy Cameron equivocated and said he did not remember whether he asked [D]efendant what his drug of choice was." The trial court then concluded that "Defendant did not prove by a preponderance of the evidence that Deputy Cameron asked him what his drug of choice was."

¶ 9 Thereafter, the record of said proceedings was transmitted to this court and we now address the merits of Defendant's appeal.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 10 Defendant argues that his trial counsel rendered ineffective assistance for failing to timely file a motion to suppress Defendant's statements to Deputy Cameron, which were, according to Defendant, obtained in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). " 'In ruling on an ineffective assistance [of counsel] claim following a[r]ule 23B hearing, we defer to the trial court's findings of fact, but review its legal conclusions for correctness.' " *State v. Hernandez,* 2005 UT App 546, ¶ 13, 128 P.3d 556 (second alteration in original) (quoting *State v. Bredehoft,* 966 P.2d 285, 289 (Utah Ct.App.1998)).

## ANALYSIS

¶ 11 Defendant claims that his trial counsel provided ineffective assistance by failing to timely file a motion to suppress Defendant's statements to Deputy Cameron. "Establishing ineffective assistance of counsel requires [Defendant] to meet 'the heavy burden of showing that (1) trial counsel rendered deficient performance which fell below an objective standard of reasonable professional judgment, and (2) counsel's deficient performance prejudiced him.'" *State v. Roth*, 2001 UT 103, ¶ 5, 37 P.3d 1099 (quoting *State v. Chacon*, 962 P.2d 48, 50 (Utah 1998)). "In reviewing an alleged deficiency in counsel's trial performance, we must indulge in the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, [Defendant] must overcome the presumption that under the circumstances, the challenged action might be considered sound trial strategy." *State v. Bryant*, 965 P.2d 539, 542 (Utah Ct.App.1998) (quotations and citations omitted). Furthermore, "[t]o establish prejudice, [D]efendant must show a reasonable probability . . . that except for ineffective counsel, the result would have been different." *State v. Kelley*, 2000 UT 41, ¶ 25, 1 P.3d 546 (omission in original) (quotations and citation omitted).

¶ 12 Prior to reaching Defendant's ineffective assistance of counsel claim, "we must first decide whether [D]efendant's *Miranda* rights were actually violated," because "[i]f they were not, trial counsel's tardiness in bringing the suppression motion was not prejudicial and the ineffective assistance claim fails." *State v. Snyder*, 860 P.2d 351, 354 (Utah Ct.App.1993); *see also State v. Kooyman*, 2005 UT App 222, ¶ 31, 112 P.3d 1252, *cert. denied*, 125 P.3d 102 (Utah 2005). Under *Miranda*, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444, 86 S.Ct. 1602. Thus, *Miranda* warnings must be given to a defendant subject to "custodial interrogation," which means "questioning initi-

ated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*

¶ 13 The parties agree that, for *Miranda* purposes, Defendant was in custody during his conversation with Deputy Cameron. We therefore focus our analysis on whether Deputy Cameron interrogated Defendant. The term "interrogation" under *Miranda* refers not only to "express questioning," but also to "its functional equivalent." *Kooyman*, 2005 UT App 222 at ¶ 31, 112 P.3d 1252 (quotations and citations omitted). Thus, an encounter with police constitutes an interrogation if

> it involves "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police."

*Id.* at ¶ 32 (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)); *see also State v. Dutchie*, 969 P.2d 422, 426 (Utah 1998).

¶ 14 In the instant case, Deputy Cameron engaged in a conversation with Defendant in a police car without having advised Defendant of his *Miranda* rights. Defendant had already been arrested, and the investigation undoubtedly focused on him. Deputy Cameron answered Defendant's questions and then asked follow-up questions of his own regarding Defendant's criminal history. Such questions were "reasonably likely to elicit an incriminating response" from Defendant, *Kooyman*, 2005 UT App 222 at ¶ 32, 112 P.3d 1252 (quotations and citation omitted), because questions about Defendant's criminal history were incriminating as to whether the drugs and paraphernalia belonged to Defendant. Therefore, Deputy Cameron's questioning constituted an interrogation. As such, Deputy Cameron violated Defendant's rights under *Miranda* and the Fifth Amendment, and the trial court should have suppressed Defendant's statements if

Defendant had timely filed his motion to suppress.

▐ ¶ 15 Having determined that Defendant's motion to suppress would have succeeded on the merits, we turn to his ineffective assistance of counsel claim. Respecting trial counsel's alleged deficient performance,[1] Defendant asserts that "there was no legitimate trial strategy in failing to timely file the motion to suppress." We agree. Defendant's trial counsel filed the motion to suppress one day late, despite her knowledge of the motion's due date, and the trial court denied the motion as untimely. Further, trial counsel admitted that the late filing was "not a trial strategy" and that she would have filed the motion earlier but for her "busy schedule." Such conduct falls below "the wide range of reasonable professional assistance" afforded trial counsel, *Bryant*, 965 P.2d at 542 (quotations and citations omitted), and constitutes deficient performance.

▐ ¶ 16 Respecting the prejudice prong of the ineffective assistance analysis, it is clear that the erroneous admission of Defendant's statements caused him harm. During the interrogation, Deputy Cameron learned that Defendant's "drug of choice" was methamphetamine. Deputy Cameron also testified that Defendant stated that he was a drug addict and that he had used methamphetamine approximately ten hours prior to his arrest. These statements were perhaps the strongest evidence linking Defendant to the syringe because there was no evidence that Defendant had recently used the syringe or that it definitely belonged to him.[2] Indeed, Defendant stated that the syringe did not belong to him, and Deputy Cameron did not check Defendant for needle marks or test the syringe for Defendant's fingerprints or DNA. Defendant was a passenger in a car with three other individuals, and Deputy Cameron saw only the driver move as if to reach underneath his seat and hide something. There is no admissible evidence in the record that Defendant was under the influence of methamphetamine or any other controlled substance at the time of his arrest.

1.  The parties conceded at the rule 23B hearing "that [D]efendant's trial counsel failed to file a timely motion to suppress his statements to Deputy Cameron and that, if a motion would have been meritorious, counsel performed deficiently." We nonetheless address both prongs of the ineffective assistance of counsel analysis for the sake of clarity.

2.  The State's case against Defendant was based on a constructive possession theory. *See, e.g., State v. Layman*, 1999 UT 79, 985 P.2d 911; *State v. Fox*, 709 P.2d 316 (Utah 1985). Under this approach, the State must show that "there was a sufficient nexus between the defendant and the drugs or paraphernalia to permit a factual inference that the defendant had the power and the intent to exercise control over the drugs or paraphernalia." *Layman*, 1999 UT 79 at ¶ 15, 985 P.2d 911. In other words, "the prosecution need only establish that the produced contraband was found in a place or under circumstances indicating that the accused had the ability and the intent to exercise dominion and control over it." *State v. Hansen*, 732 P.2d 127, 132 (Utah 1987).

    Utah case law enumerates several "relevant considerations" for evaluating whether a sufficient nexus exists between the accused and the drugs or paraphernalia to support constructive possession. *Layman*, 1999 UT 79 at ¶ 15, 985 P.2d 911. These considerations include: (1) "[o]wnership and/or occupancy of the premises upon which the drugs are found," (2) "incriminating statements made by the accused," (3) "incriminating behavior of the accused," (4) "presence of drugs [or paraphernalia] in a specific area over which the accused had control," and (5) "presence of drug paraphernalia among the accused's personal effects or in a place over which the accused has special control." *Fox*, 709 P.2d at 319. The "furtive movement" of passengers in a car prior to being stopped has also been considered. *State v. Salas*, 820 P.2d 1386, 1388 (Utah Ct.App.1991) (determining that movement of passenger in backseat just prior to traffic stop, coupled with location of controlled substances in backseat did not alone support constructive possession of controlled substance by driver of vehicle). In sum, the factual circumstances of the case must "permit the inference that the accused intended to use the drugs as his or her own." *Fox*, 709 P.2d at 319; *see also Salas*, 820 P.2d at 1388 ("In order to find that the accused was in possession of drugs found in an automobile he was not the sole occupant of, and did not have sole access to, there must be other evidence to buttress such an inference.").

    The facts in this case demonstrate that Defendant was aware that the syringe was in the car, but aside from the syringe's proximity, there is little to no admissible evidence indicating that Defendant intended to "exercise dominion and control," *Hansen*, 732 P.2d at 132, over the syringe. Thus, Defendant's statements to Deputy Cameron were critical to the State's constructive possession theory.

The only behavior that may be linked to Defendant was his "nervous movements" and looks over his shoulder as Deputy Cameron approached the car. Under such circumstances, but for trial counsel's failure to timely file the motion to suppress, there is a "reasonable probability" of a different and more favorable outcome for Defendant. *State v. Kelley*, 2000 UT 41, ¶ 25, 1 P.3d 546 (quotations and citation omitted). Defendant's trial counsel therefore rendered ineffective assistance by failing to timely file Defendant's motion to suppress evidence. Thus, we reverse Defendant's convictions, and we remand to the trial court for further proceedings to be conducted without Defendant's inadmissible statements.[3]

## CONCLUSION

¶ 17 Defendant's trial counsel rendered ineffective assistance for failing to timely file a motion to suppress Defendant's statements to Deputy Cameron, which were elicited in violation of Defendant's *Miranda* rights. Because the admission of Defendant's statements prejudiced him at trial, we reverse Defendant's convictions for unlawful possession of a controlled substance and unlawful possession of drug paraphernalia, and we remand to the trial court for further proceedings to be conducted in accordance with this opinion.

¶ 18 WE CONCUR: JUDITH M. BILLINGS and CAROLYN B. McHUGH, Judges.

---

**3.** Prior to the rule 23B remand, Defendant also argued that we should reverse his convictions based on insufficient evidence, a claim which Defendant failed to preserve below. Because we reverse based on trial counsel's failure to timely file the motion to suppress, we do not reach Defendant's insufficient evidence argument.