IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | OPINION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20110146-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (December 6, 2012) |
| Rolando Cardona-Gueton, | ) | |
| | ) | 2012 UT App 336 |
| Defendant and Appellant. | ) | |

-----

Third District, Salt Lake Department, 091908492
The Honorable Judith S. Atherton

Attorneys:     Brittany D. Enniss and Kerri S. Priano, Salt Lake City, for Appellant
               Mark L. Shurtleff and Kenneth A. Bronston, Salt Lake City, for Appellee

-----

Before Judges Thorne, Voros, and Roth.

VOROS, Judge:

¶1     Rolando Cardona-Gueton appeals his conviction for possession with intent to distribute a controlled substance with an enhancement for commission of the offense in a drug-free zone. *See* Utah Code Ann. §§ 58-37-8(1)(a)(iii), -8(4)(a)(v) (LexisNexis 2012).[1] Cardona-Gueton contends that the State presented insufficient evidence that he possessed the drugs. He also contends that the State presented insufficient evidence that the offense occurred within a drug-free zone. We affirm.

---

[1]Because the statutory provisions in effect at the time of the offense do not differ from the provisions currently in effect in any way material to this case, we cite the current version of the Utah Code for the convenience of the reader.

BACKGROUND

¶2     On October 22, 2009, three police officers were on bicycle patrol at the intersection of 300 West and 400 South in Salt Lake City. One officer saw Cardona-Gueton at the "No. 4 corner of Pioneer Park or in that intersection of Pioneer Park," engaged in what he believed to be a drug deal.

¶3     The officers approached Cardona-Gueton, who was sitting on a bench smoking a cigarette. The officers believed he was violating a prohibition on smoking in the park, and one officer began to write a citation for the violation. The officers noticed near Cardona-Gueton a bicycle that they suspected was one that had been reported stolen. Two of the officers asked Cardona-Gueton if the bicycle was his, and he responded that it was. One officer asked Cardona-Gueton if he could look at the bicycle; Cardona-Gueton agreed. The officer turned the bicycle over to examine the serial number and noticed the first of two hidden compartments. When the officers indicated they would inspect the compartment, Cardona-Gueton stated, "That's not mine," and denied ownership of the bicycle. Inside the compartment was a removable container holding fourteen rocks of crack cocaine, amounting to "about two grams."

¶4     Cardona-Gueton was charged with one count of possession with intent to distribute. The State amended the charge to include a drug-free zone enhancement, elevating the offense to a first degree felony. Cardona-Gueton unsuccessfully objected to the amendment.

¶5     The case was tried to a jury. At the conclusion of the evidence, Cardona-Gueton unsuccessfully moved for a directed verdict on three grounds: (1) insufficient evidence of possession, (2) insufficient evidence of intent to distribute, and (3) insufficient evidence to support the drug-free zone enhancement. The jury found Cardona-Gueton guilty of the charged offense and found the enhancement by special verdict. After trial, Cardona-Gueton unsuccessfully moved for judgment notwithstanding the verdict on the same three grounds. On January 14, 2011, Cardona-Gueton was sentenced to a prison term of five years to life.


ISSUES AND STANDARDS OF REVIEW

¶6     Cardona-Gueton presses two challenges on appeal. First, he contends that the evidence at trial was insufficient to prove that he possessed the cocaine. Second, he contends that the evidence was insufficient to prove the offense occurred in a public

park. Cardona-Gueton frames these issues as challenges to the jury's verdict.[2] Accordingly, "[w]e review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict . . . [and] reverse . . . only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted." *State v. Hamilton*, 827 P.2d 232, 236 (Utah 1992) (citation and internal quotation marks omitted).

ANALYSIS

I. Actual or Constructive Possession of the Drugs

¶7     Cardona-Gueton first contends that the State failed to present sufficient evidence that he possessed the cocaine. Specifically, he argues that the State "failed to establish a sufficient nexus between [himself] and the drugs to establish constructive possession."

¶8     Conviction for possession of a controlled substance with intent to distribute requires proof that (1) the defendant knowingly and intentionally possessed the controlled substance, and (2) the defendant intended to distribute the controlled substance. *State v. Fox*, 709 P.2d 316, 318 (Utah 1985); *see also State v. Layman*, 953 P.2d 782, 787 (Utah Ct. App. 1998) (*Layman I*), *aff'd*, 1999 UT 79, 985 P.2d 911 (*Layman II*). Possession "sufficient to sustain a conviction need not be actual but may be constructive." *Layman I* at 787 (citing *State v. Bingham*, 732 P.2d 132, 133 (Utah 1987)). Constructive possession must be proven by a "sufficient nexus between the defendant and the drugs . . . to permit a factual inference that the defendant had the power and the intent to exercise control over the drugs . . . ." *Layman II* ¶ 15. The evidence must also establish that the accused "intended to use the drugs . . . as his own." *Id.* In sum, "the evidence must raise a reasonable inference that the defendant was engaged in a criminal enterprise and [was] not simply a bystander." *Layman I* at 787 (citation and internal quotation marks omitted). A non-exclusive list of evidentiary factors "tending to link an accused with drugs" in certain situations includes "incriminating statements, suspicious or incriminating behavior, sale of drugs, . . . [and] proximity of defendant to

---

[2]To the extent that Cardona-Gueton's arguments may be construed as claiming that the trial court erred in denying his motion for a directed verdict, we note that such claims involve "basically the same analysis" and may be considered together with the challenge to the jury's verdict. *State v. Hirschi*, 2007 UT App 255, ¶¶ 15–16, 167 P.3d 503.

location of drugs." *State v. Salas*, 820 P.2d 1386, 1388 (Utah Ct. App. 1991); *see also Layman II* ¶¶ 14–15.

¶9     Cardona-Gueton argues that the State's evidence was insufficient to establish (1) that the bicycle was his, (2) that he knew the bicycle held drugs, and (3) that he intended to use the drugs as his own. However, the jury's verdict is supported by evidence of possession in the form of incriminating statements, suspicious behavior, and proximity. Cardona-Gueton was seen drinking from the bicycle's water bottle. The officers approached him because he appeared to have been involved in a drug deal. When they approached, he was sitting no more than six inches from the bicycle. When asked about the bicycle, Cardona-Gueton twice stated that it was his. He denied ownership only when an officer turned the bicycle over, exposing a hidden compartment. Finally, the amount of crack cocaine found in the bicycle was consistent with the officers' observation of a suspected drug deal, as was the $166 they found on Cardona-Gueton's person.

¶10     Cardona-Gueton argues that because the only evidence against him was "circumstantial, the evidence supporting a conviction must preclude every reasonable hypothesis of innocence." *See State v. Hill*, 727 P.2d 221, 222 (Utah 1986) (plurality opinion); *Layman I* at 786. He suggests that alternative theories can explain the evidence in a manner consistent with his innocence. For example, he may have bought, found, or even stolen the bicycle, and only after the officers found the compartment did he "realize[] that there was some type of contraband in the . . . compartment and want [to claim] that he did not actually own the bike." Thus, he reasons, the jury must have had a reasonable doubt as to his guilt.

¶11     Whether an alternative explanation is "reasonable" depends on the credibility of the evidence supporting it. The law is well established that "[t]he existence of one or more alternate reasonable hypotheses does not necessarily prevent the jury from concluding that [a] defendant is guilty beyond a reasonable doubt." *State v. Blubaugh*, 904 P.2d 688, 695 (Utah Ct. App. 1995). "This is so because it is the exclusive province of the jury to weigh the competing theories of the case, in light of the evidence presented and the reasonable inferences drawn therefrom, and to conclude which one they believe." *State v. Buck*, 2009 UT App 2, ¶ 14, 200 P.3d 674. "Where the jury has done just that, we will reverse its verdict only if we determine" that "the evidence is so insubstantial or inconclusive" that "the evidence and inferences did not preclude the reasonable alternative hypothesis presented by the defense." *Id.* (citation and internal quotation marks omitted).

¶12     Stated another way, framing a claim as a reasonable-alternative-hypothesis claim presupposes that the alternative hypothesis is reasonable. But a finding that a defendant is guilty beyond a reasonable doubt is necessarily a finding that any alternative hypothesis of innocence presented at trial was *not* reasonable under the jury's view of the evidence. Consequently, an appellate court will reverse such a finding only where no reasonable juror could have taken that view of the evidence.

¶13     Here, however, Cardona-Gueton asserts theories on appeal that were never presented to the jury. He did not argue at trial that he bought, found, or stole the bicycle wholly unaware of the cocaine hidden within it. Instead, he testified that the bicycle was not in his possession at all. The jury heard testimony that Cardona-Gueton first told the officers that the bicycle was his, then that it was not. The jury apparently believed the first statement and disbelieved the second. While it might have made the opposite credibility determination, it was not required to do so by the reasonable doubt standard.

¶14     An appellate court will not "substitute its judgment for that of the jury" and will reverse only "if the evidence is so insubstantial or inconclusive that reasonable minds must necessarily entertain a reasonable doubt as to a defendant's guilt." *Hill*, 727 P.2d at 222. That is not the case here. Accordingly, we decline to disturb the jury's verdict on the question of possession.

## II. The Drug-Free Zone Enhancement

¶15     Cardona-Gueton also challenges the jury's special verdict on the ground that the State did not present sufficient evidence to prove beyond a reasonable doubt that the offense occurred in a public park. Cardona-Gueton was convicted of possession of cocaine. A first offense of possession of cocaine is a second degree felony when a person "knowingly and intentionally" possesses the drug with intent to distribute. Utah Code Ann. §§ 58-37-8(1)(a)(iii), -(b)(i) (LexisNexis 2012); *id.* § 58-37-4(2)(b)(D). However, the offense is a first degree felony when committed within a drug-free zone, including "a public park, amusement park, arcade, or recreation center." *Id.* § 58-37-8(4)(a)(v).

¶16     The drug-free zone enhancement is an element of the crime and so must be proved beyond a reasonable doubt to the same trier of fact who decides guilt for the underlying crime. *See State v. Davis*, 2007 UT App 13, ¶¶ 10, 25, 155 P.3d 909 (reversing enhancement of a defendant's conviction because the trial court erred by instructing the jury that a bicycle path was a public park as a matter of law); *State v. South*, 932 P.2d 622, 627 (Utah Ct. App. 1997) (reversing a defendant's conviction on an enhancement

because the trial court found the enhancement at sentencing). Consequently, here, the State bore the burden to prove to the jury beyond a reasonable doubt that Cardona-Gueton was in a public park when he committed the offense.

¶17    Although Cardona-Gueton's challenge is framed as a sufficiency claim, he begins by asserting that the term "public park" as used in Utah Code section 58-37-8(4)(a) does not include sidewalks. His argument relies on related statutes, statutory history, dictionary definitions, and the Salt Lake City Code. However, he does not argue that the trial court erred in not instructing the jury on the definition of "public park" or otherwise frame his appellate challenge as a question of statutory interpretation, or as an issue of law rather than fact.[3]

¶18    We therefore do not view this claim as presenting a question of statutory interpretation. This approach is consistent with our holding in *State v. Davis*, 2007 UT App 13, 155 P.3d 909. There we held that a trial court erred by instructing the jury that a bicycle path was a public park within the meaning of the drug-free zone statute. *Id.* ¶¶ 9–10, 12 (citing *State v. Powasnik*, 918 P.2d 146, 148–50 (Utah Ct. App. 1996)). Rather, "the trial court should have allowed the jury to determine whether the bicycle path was a public park within the meaning of the drug-free zone statute." *Id.* ¶ 9.[4]

---

[3]Cardona-Gueton does complain, in a footnote in his brief, that "no instruction was given as to what qualifies as being 'in a public park'" and that the jury "was never provided a definition of 'in a public park.'" However, he did not object to the jury instructions on this basis at trial, nor does he identify this supposed omission as a claim of plain error on appeal or complain that his trial counsel was ineffective for not seeking such an instruction. Accordingly, we read these passages as an argument in support of his sufficiency challenge, not as an attempt to recast the issue as one of law.

[4]We do not suggest, and *Davis* does not hold, that a question of statutory interpretation could never be imbedded within a sufficiency claim. Indeed, the issue before us might, in a different case or context, be framed as one of statutory interpretation. Neither do we mean to imply that Cardona-Gueton would be likely to prevail if the issue were viewed as one of statutory interpretation. The State points out, for example, that Salt Lake City seems to regard Pioneer Park as encompassing the entire block. *See* Salt Lake City City Code § 15.04.150 (2009) (describing Pioneer Park as "[a]ll of . . . the area between Third and Fourth South Streets and Third and Fourth West Streets"). *But see id.* § 1.04.010 (defining a "street" to include sidewalks). We express no opinion on that point.

¶19    "Because we decline to view this case as presenting a question of statutory interpretation, and because the statute itself does not define ['public park'], we give broad deference to the jury's common sense understanding of this phrase." *See State v. White*, 2011 UT App 162, ¶ 11 n.7, 258 P.3d 594. At trial, all of the witnesses, including Cardona-Gueton himself, referred to his location as being "in the park." One officer testified that Cardona-Gueton was "smoking in the park." On cross-examination, he added that he had seen Cardona-Gueton standing "five feet from the park bench" when the alleged drug transaction took place.[5] Another officer testified that the bench was "in the park." Cardona-Gueton testified that he went "to the park every day" and that, when he "got to the park [and] sat down[,] . . . the bicycle . . . was already there." He also agreed with the prosecutor that the bench on which he had been sitting was a "park bench." Finally, Cardona-Gueton testified that he disposed of his cigarette when the officers approached because he knew "that you're not supposed to smoke in the park." Notably, no witness testified that Cardona-Gueton was *not* in Pioneer Park at the time of the offense.

¶20    Cardona-Gueton argues that none of these witnesses had "actual knowledge of whether the sidewalk was part of the park." However, we do not know whether they had such knowledge. None of the above testimony provoked an objection for lack of foundation. As a result, the record is silent as to the extent and nature of the witnesses' knowledge of the matter. The issue was not probed at trial because defense counsel did not challenge the State's evidence on this point. Indeed, the State correctly observes that "defense counsel did not even argue in closing that the bench was not in the park."

¶21    To successfully challenge the jury verdict, Cardona-Gueton must demonstrate that, viewing the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict, reasonable minds must have entertained a reasonable doubt that the offense occurred in Pioneer Park. *See State v. Hamilton*, 827 P.2d 232, 236 (Utah 1992); *Davis*, 2007 UT App 13, ¶¶ 10–11. Multiple witnesses testified that it did. The jury was under no obligation to doubt that testimony or surmise that the witnesses lacked knowledge of what constitutes a public park, and Cardona-Gueton apparently gave the jury no reason to do so. The evidence was therefore sufficient to sustain the finding, and we will not disturb it on appeal.

---

[5]On appeal, Cardona-Gueton maintains that trial witnesses used the word "park" before the word "bench" to refer to its style, not its location. We agree that the term is ambiguous.

CONCLUSION

¶22    The evidence presented at Cardona-Gueton's trial was sufficient for the jury to find that Cardona-Gueton possessed the cocaine and intended to distribute it. The evidence was also sufficient for the jury to find that the offense was committed within a park. Accordingly, we affirm.

_____
J. Frederic Voros Jr., Judge

-----

¶23    WE CONCUR:

_____
William A. Thorne Jr., Judge

_____
Stephen L. Roth, Judge